You can all be seated. Yeah, sorry. The next matter, number 231548, Hector Ferreira da Costa versus Jessica Camila Albefaro de Lima. At this time, would counsel for the appellant please introduce himself on the record to begin. Good morning, Charles Hunsinger for petitioner father Hector Ferreira da Costa. I'm joined by my colleagues Elizabeth Crowley and Emily Weber. If you don't mind moving your mic up a little higher. Thank you. May I reserve three minutes for rebuttal? You may. Thank you, your honors. It may have pleased the court. We are asking you to reverse the trial court's determination that the child that father did not meet his burden of proof to show that he had rights of custody and that mother met her burden of proof to show that the child is well settled in the United States. Father brought this case pursuant to the hate convention on the civil aspects of international child abduction and the International Child Abduction Remedies Act. The purposes of those laws are to prevent. Can I just ask you, is your understanding that the district court made a finding on the custody issue or just assumed the custody issue and then decided it based on the well settled issue? Thank you, your honor. The district court judge said that she would need a more thorough presentation on Brazilian law to make a determination that father had met his burden of proof. We, therefore, take the position that she did decide the issue. And we take the position that that statement itself was error. Rights of custody, as defined by the hate convention, are rights relating to the person of the child, including the right to determine the child's place of residence. While local law sets out the substance of the rights. So just so I follow, if we were to conclude that you were right on the well settled issue, we wouldn't be able to just remand at that point. We'd also have to determine that she was wrong on the custody issue. That's correct. Otherwise, you'd lose. That's correct, your honor. We are asking for the reversal of both of those determinations. And I do think that both of those determinations are crucial to us winning this bill. The purposes of the hate convention and ICARA are to ensure that the pre-abduction status quo is returned. There's a strong presumption favoring the return of the child. And the affirmative defenses are to be construed narrowly. The child here was born in Brazil. The parents were married Brazilian citizens. The child is a Brazilian citizen. They all speak Portuguese as a first language. The child was removed at the age of three. As I've stated, we have two arguments. One, that the trial judge clearly erred by concluding that father did not meet his burden of proof on the rights of custody. And two, that mother did meet her burden of proof on the now settled. Father must have shown by a preponderance of the evidence that he had rights of custody. Can you, just for my benefit, start with the well settled issue? Yes, of course. To meet her burden of proof on the now settled argument, mother had to have shown by a preponderance of the evidence that the child is now settled or well settled here in the United States. The rule is that the court shall order the return of the child unless mother meets that burden by a preponderance of the evidence. And do we review the finding that the burden's been met for clear error? We are taking that position, yes, Your Honor. And there was a finding that it was met here? Yes, Your Honor. So we'd have to find that it was clearly erroneous? Yes. So why is it clearly erroneous? It's clearly erroneous, we contend, because for a couple of reasons. One, I just want to briefly mention that the State Department has interpreted the preponderance of the evidence burden to require substantial evidence of significant connections. And the State Department interpretation of the hate convention is entitled to some deference. We have two arguments. One, that where there was a lack of pre-petition evidence, it was clear error to conclude that mother met her burden of proof. And this on, well, stay with the other one. And two, that the trial judge erred in weighing the evidence relevant to the well-settled argument. And so I'm just trying to understand the first argument. Because the first argument could be just a part of your weighing argument. But I take it you mean by it something different? Yes, Your Honor. I would say that it should be taken into account, both as a standalone argument and as a portion of the weight. What's the standalone version of it? The standalone version is that the minor child was removed from Brazil in 2019. Father discovered that the minor child was here in the US and would not be returning in December of 2020. From December of 19 to June of 2022, when father filed his hate petition, the only evidence in the record about the child's status in Martha's Vineyard was mother's testimony. Mother testified that she could not enroll the child in extracurricular activities, that they could not participate in normal community activities because of COVID. They moved three or four times in that time span, including once because their house had been sold and they were forced to move out. Mother did not take the child to the doctor for preventive medical care. The evidence in the record is that in August of 2022, mother took the minor child to a primary care doctor for the first time in the United States, where it was revealed that the minor child had been suffering from knee pain for a year and a half and needed vaccines to be up to date before going to school. There was no enrollment in daycare. There was no enrollment in English lessons. In fact, the evidence was also that the minor child only started going to church regularly in the past six months prior to trial. Because of mother's burden of proof on this issue, we contend that where there is that dearth of evidence prior to the petition being filed, it meets with the narrow interpretive standards and the purposes of the hate convention for the minor child to not be considered well-settled when there's that lack of pre-petition evidence. No matter how strong the evidence of settlement post-petition is? Yes, Your Honor, because... Is there any authority for that idea? I was not able to find any when I was... What would support that notion? So even if the post-petition period was longer than the pre-petition period? Your Honor, if a respondent can meet their burden of proof with solely post-petition evidence after being on notice of what the well-settled defense is and what you need to show under that defense, any respondent would be entitled to meet their burden of proof based on manufactured evidence. Well, if it's manufactured, then it can't count. Well, we would contend that the evidence post-dating the petition here was, in fact, manufactured. But your first argument is a contention that even if it wasn't, it can't count simply because it's post-petition. Yes, Your Honor. And what supports that notion? Again, the principles and purposes of the hate convention that require the return of the child to maintain the status quo. But one of the things that we're somewhat interested in is the child. And if there's very, very strong evidence, in fact, of the well-settled nature of the child, even though it's solely in consequence of non-manufactured post-petition evidence, why would it make sense to completely ignore that just because it's post-petition? Your Honor, I think for the reason I briefly touched on, that post-petition evidence is, by nature, developed when the respondent is on notice of what their affirmative defenses to the hate convention are. I don't know why you say that. It's certainly, by nature, developed after it because it's post. But we don't know that it's developed by reason of. That would just seem to be the record shows that's why it was created, or the record doesn't show it. Which might be a credibility determination for the trial judge, which plays into our second argument about the weighing of the evidence. OK, so let's go to the weighing. Yes, Your Honor. In the First Circuit, any relevant factor can be considered in weighing whether a child is well-settled. Here, the age of the child, he was three when he was removed from Brazil. The extracurricular activities and education, he was not enrolled in daycare. He was not enrolled in any sort of pre-kindergarten education prior to the fall of 2022. The evidence was that he only started going to church regularly in the past six months after the petition was filed. The stability of mother's employment, she testified at trial that she worked three jobs and that she had required financial support from her family in order to make ends meet. The stability of the residence, again, they had lived in three or four homes. And the education of the child, mother had canceled a parent-teacher conference and had not made it up. She had, the schoolteacher, in fact, testified that she hadn't spoken to mother. And the concealment of the child, again, here, December of 2019, removed from Brazil. December of 2020 is the first time that father finds out that the minor child is not intended to be returned to Brazil. In light of the narrow interpretation, we contend that the trial judge clearly erred in weighing this evidence, that the evidence did not show that the minor child was well-settled here in the US. And I would also point back to the evidence of the fact that the minor child hadn't been to the doctor for preventive medical care. That really surprised me at trial, to find that the minor child had knee pain for a year and a half at age six, and was, in fact, ordered to have x-rays taken of that knee the first time he went to a primary care doctor. So we contend that the weighing of all this evidence reveals that the judge clearly erred by finding that mother met her burden of proof. In conclusion, your honors, I would ask that you reverse the trial judge's determination that father did not meet his burden of proof that he had rights of custody, that you reverse the trial judge's determination that mother had met her burden of proof on the well-settled exception, and that you order the return of the child to Brazil. Thank you. Thank you. Thank you, counsel. At this time, if counsel for the appellee would please introduce himself on the record to begin. Thank you. Good morning, your honors. Ruben Rodriguez of Foley and Lardner on behalf of respondent appellee, Ms. Albafaro de Lima. May it please the court. While the hate convention reflects a design to discourage child abduction, as the Supreme Court in Lozano recognized, quote, the convention does not pursue that goal at any cost. It imposes burdens on both parties, but in particular on the petition, it puts the burden on the petitioner to file within a year of removal in order to avoid the now-settled defense. It also puts the burden on the petitioner to demonstrate that they are exercising custody rights. And I'm going to start on the well-settled point, but on the finding question that your honor asked opposing counsel, we do think the court made a finding, but then just assumed arguendo to then make a decision on the now-settled defense. What does that mean? So it means that I believe there is a factual finding in the record that with regards to petitioner, there is no petitioner did not meet his burden to prove that he has any innate exeunt right or custody rights. But the court didn't rely on that and moved on to the now-settled defense in the opinion. So we think there's enough there to affirm on alternative grounds on the custody issue, but let me focus on the well-settled issue. So just to make it clear, if we were to conclude that the well-settled finding was an error, we couldn't just vacate on your view. We'd have to also conclude that there was error as to the custody finding. I believe so, because I think there would be, we've always conceptualized it as an alternative reason to affirm the court's decision, is that the court didn't meet its burden. You wouldn't just vacate for the district court to make a finding about custody, because your contention's already been made. That's correct. On the well-settled issue, Your Honor, I'd like to start by pointing out that the Supreme Court in Lozano recognized  is the interest of the child in settlement. That's at the Lozano decision on pages 15 to 17, where the court says that rather than establishing any certainty about the respective rights of the parties, it's talking about equitable tolling principles, the expiration of the one-year period opens the door to consideration of a third party's interest, i.e. the child interest in settlement. And if the concern of the now settled defense is the child's interest in settlement, it does not make sense to us that you would discount or ignore post-petition evidence. Petitioner here, the opening brief made it sound like you should completely ignore the post-petition evidence. In the reply brief, they seem to have softened that position again, and it seems more like a weighing argument that the pre-petition evidence should outweigh the post-petition evidence. There's no support for that in the record, and we submit that that's actually really inconsistent with the purpose of the now settled defense, which is the interest of the child in settlement, not the broad interest of the child, but the interest of the child in settlement. And let's ask it this way. If we only had the post-petition evidence, in other words, if we didn't have anything in the record that showed what happened pre-petition, is the post-petition evidence, what's your assessment of the post-petition evidence just on its own, how strong it is in showing the child to be well settled? Sure. So there is a significant amount of post-petition evidence, and we would submit the post-petition evidence is sufficient to affirm a now settled defense. I will note. What's the duration of the post-petition period about which we have evidence concerning the child's settlement? The post-petition period begins in, I believe, April of 2022 and proceeds through February of 2023, so less than a year. Less than a year. But I will note that it's an important year in the child's development. This is the year the child turned five. Five is when they're eligible to start kindergarten, so the reason the child hadn't started school is, I think, fairly obvious that it was kindergarten. And I will note that there was pre-petition evidence here. It wasn't just the mother's testimony and the items that counsel pointed out to. I have a list of pre-petition citations to the appendix, but the mother testified. They'd been on Martha's Vineyard. The family testified that they'd been with the mother and child since they came to Martha's Vineyard. They had moved around, but there's no suggestion that those movements were driven by anything other than moving and improving their relations on Martha's Vineyard. And I thought one of the moves was because they were told they had to leave. They were told to have to leave, but not because of their fault. The landlord was converting the unit to something else, so she couldn't. But that seems not quite the same as moving to improve your situation. Well, she ended up moving in, I think, with her family for a bit until she got an apartment. So the citations to the record, just so that I have them out, appendix 686 to 689, 712 to 716, these are all in the brief. I'm not adding anything new. 750 to 751, 825 to 826, 835, and 844 to 845 all demonstrate pre-petition evidence of the child being under the age of five, but close to family, his mother, his grandparents, who did daycare duties. So he wasn't in daycare, but he was spending the days with his family instead. Did the district court rely on any of the pre-petition evidence? It was in the record. I can't recall right now. Did the district court rely on any of it? I cannot recall if it was specifically cited in the order. Because weren't we reviewing the finding that the district court made? Sure. I think the district court did make a statement. I can't pull it out. But I think there was something in the court about since they arrived at Martha's Vineyard, they've been living with the family, which is kind of the point I'm trying to make. In terms of post-petition evidence, as I said, it was a significant year for the school. Coming out of COVID, the child was eligible to enroll in kindergarten. They did, started enrolling in activities like swim lessons, started attending church in real life instead of Zoom, where the church got its trial programming back together. In the court below, the school teacher came and testified and talked about how well he was doing in school. His English had dramatically improved. The petitioner makes a trial petitioner put a lot of weight on his lack of English skills. But that was demonstrated to be improving dramatically by the time of the hearing. And I take it there's no evidence one way or the other in the record that directly addresses the question of whether there's reason to expect that this type of settlement of the child will continue and isn't just made for the purpose of defeating the petition. There is nothing in the record to suggest that at all, Your Honor. And I would note on this idea of the two arguments, they frame it as weighing the arguments or weighing the evidence below versus this sort of bright line rule that the pre-petition evidence should outweigh the other rule. That was an argument that was never raised below. It's not found in the record. Which one? The idea that pre-petition evidence either shouldn't, sorry, the idea that either post-petition evidence shouldn't be considered or that pre-petition evidence greatly outweighs post-petition evidence. Neither argument was raised below. Say that again. Neither argument was raised below. Neither was raised below. Arguably, they made arguments about the weight of the evidence and whatnot. But this idea that the pre-petition period formed a bright line of some sort, that wasn't raised below. So we do have a waiver argument in the briefs on that point as well. The mother has an asylum claim that's pending. Is that right? The mother has an asylum claim that's pending. What's the status of that? So the status of that, I'm not handling that nor are we handling that matter. So I'm not entirely certain. But the last time I checked, there was a master calendar hearing set for some time in March. But my understanding is that that is not the asylum hearing. That's still to be determined in the future. And the child's claim to permanency here, is that derivative or does the child have some other claim pending? The child is on the asylum application. It would be derivative of the mother's. I will note, and we covered this in the briefing a bit, that our view is that the merits of the asylum petition, they weren't terribly discussed below. We don't think the merits are relevant. I think from an immigration status perspective, what is relevant and should be considered, I will admit that under the totality of the circumstances test is whether the child is imminently subject to removal, which with the pending asylum application, they are not. And the mother has work authorization and is working and providing for the family. I have some time left. I don't know if your honors want us to discuss the issue. Can I just understand how it works under the Hague Convention when you have a person with undocumented status? Suppose the case came to us at a time in which the post-petition evidence was the same as it is here. So equally strong as to, or weak depending on how you characterize it, but equally strong as to showing settlement. But the record also showed that removal was imminent. Does that mean the child is well settled or not? Well, I think the approach would be the same, your honor. The district court should take a totality of the circumstances approach to that question. I will say that I don't think they're terribly relevant to the situation we have here. But there are cases out there that find a child not well settled because there is no status for them. They are evading the law or trying to avoid detection or whatnot. And honestly, there's a lot of cases where that sort of avoidance leads to situations that naturally are not well settled because you're constantly trying to avoid detection and things of that sort. That is not the case we have in front of us. There is a pending asylum claim. And there's no reason to believe that the child is not pending asylum. What happens at the moment where it becomes more imminent that removal could happen? Could you file a new petition then? I don't specifically know the answer to that question. I'm inclined to say no, you couldn't. But I don't have a specific understanding of that situation, Your Honor, if I'm being honest. And your position is just that at the present state of the record, we don't have to worry about that because there's no indication of the imminent removal. There's no imminent removal. And actually, there's a Ninth Circuit case that was cited in raid DBS, I believe. Let me just make sure I have it. That's a case where immigration status was considered. But again, because there was no imminent threat of removal there, the court actually said that it's not relevant to the well-settled analysis unless there is an imminent threat of removal. So that is, yeah, NRAB Dell, Ninth Circuit, 2009. I could just address the custody issues. But if Your Honors prefer that I move on to that. Yeah, we have a little bit of time. I think on the custody point, I would just address that the court below, the petitioner relied exclusively on the divorce agreement and did not raise the NAICCI rights until appeal. The divorce agreement, as a matter of law, does not provide custody rights. It provides only visitation rights. How do we know visitation rights aren't custody rights for purposes of the convention? So there's a line of cases, Your Honor, explaining that, well, there's a line of cases. But even before you get to the cases, the Hague Convention, Article 5, defines rights of access. Yeah, but how do we know that visitation rights, I mean, you could imagine a right of access is I can take the child to Disneyland for a week for a special trip. That's like the parents of the, you know, friend of the child or something. It's pretty different than every Tuesday I can visit my son, or every Tuesday the son can sleep over with me at my house, because I'm the father. That doesn't seem like just a right of access. Sure. Well, I guess if you look at the definition of rights of access, it shall include the right to take a child for a limited period of time to a place other than the child's habitual residence. Yeah, but the question is on a visitation right under an agreement. It's that you can do that on a regularized basis indefinitely. So my question is, is it clear from the Hague Convention that when it talks about that, a limited period of time, it means every Tuesday for the rest of his minor years? Those seem like pretty different things, potentially. Sure, well, I'd say that reading those words on their face, I think that covers the temporary time. It doesn't explain that the right to take the child on a more regular basis still isn't changing the child's residence in that circumstance. It doesn't mention residence. No, it does. It says rights of access, and this is Article V of the Hague Convention, shall include the right to take a child for a limited period of time to a place other than the child's habitual residence. Yeah, but it doesn't say you have to establish residence for it not to be more than a right of access. That's just saying if you take the child from the residence for a limited period of time, it's just a right of access. The question we have is when you have regularized visitation rights, is that just a right of access, or is it custody? And I guess there's nothing specifically on that point. In the text. And is there any case law that addresses that? No case law that specifically addresses that. But the record here plainly shows he had at least that kind of right, right? Which we've characterized as a visitation right. And I would also note that. Yeah, but that's a legal conclusion. That's not a factual point. It is a legal conclusion. I would guess if you've characterized it as just an access right as opposed to a custody right. So I guess for purposes of the finding here, I'm just sort of, it seems like there's an embedded legal determination, and I'm not sure what the basis for it is. One point, I would also point the court to the actual language of ICARA, the International Child Deduction Remedies Act, which is the implementing statute in the United States. And it actually defines rights of access under the convention as visitation rights, which I think just further strengthens your point. It literally just says the term rights of access to these visitation rights. And is that statute the controlling statute here? Yes. Unless there are any other further questions. None for me. Thank you. Thank you, counsel. At this time, if counsel for the appellant would please reintroduce himself on the record. He has a three-minute rebuttal. Thank you, Charles Hunsinger for Petitioner Hector for Articosta. Go ahead. I do want you just to address that ICARA point. Yes, Your Honor. The controlling statutes, the ICARA and the Hague Convention, do not specifically define rights of custody versus rights of access. They don't specifically say. But what about the fact that, do you agree that the statute says a right of access is a visitation right? So under Abbott v. Abbott, the Supreme Court case, rights of custody can be as little as the right to determine a child's street address. Bonner here had the right to. I just want to get an answer to my question. What do we do about the fact that ICARA says a right of access is a visitation right? And then your argument is he had a visitation right. So then he says, that's great. That shows you had a right of access, which isn't enough. What's your answer to that? My answer to that is that, pursuant to the separation agreement and the judgment of divorce, father had rights to have the child for overnight parenting time every other weekend after the child turned three. And pursuant to that judgment, quote, equal custody, unquote, of the minor child during school vacations. Setting aside the second, is the idea that visitation rights in ICARA mean something different than what this person had? Yes, Your Honor. And does that have to be true for you to win on the custody point? Yes, I would say so. And is there any case law construing visitation rights in ICARA that helps us one way or the other? Your Honor, in my preparation for this argument, I reviewed several cases in which petitioners were determined to have custody rights when they had as much parenting time as father or even less. And this is where I think our alternative argument that the trial judge concluded. Were those cases construing the word visitation in ICARA? No. How come there's no cases doing that? Because I think that in light of the interpretive principles of the laws that I talked about at the beginning of my argument, these rights are construed as broadly as possible to ensure that removing parents do not profit from their bad actions. So what does visitation mean in ICARA, in your understanding? My understanding is that visitation under ICARA means something other than the right to remove the child to father's own residence for his parenting time. As opposed to just visiting the child at the residence. Visiting the child at the residence. Yes. To briefly touch on whether this argument was waived, I'll direct you to Record Appendix 3 at 764, where the Respondent's Counsel asked mother what particular actions she took to establish the child prior to his entry of kindergarten.  Counsel asked mother if she had any medical records predating the ones that she actually produced. And Record Appendix 3 at 660, where we asked the Bible study teacher whether the child began attending Bible study prior to three or four months ago. Was there any argumentation to the district court that distinguished the pre-petition from the post-petition conduct on the grounds that some of the conduct was pre-petition rather than post-petition? Not that I recall off the top of my head. OK. Thank you. Thank you, Your Honors. Thank you, Counsel. That concludes argument in this case.